The bill was taken pro confesso, and set down to be heard ex parte as against them.
Beeman put in a plea and answer. As to so much of the bill as sought a discovery from him of the manner in which Goff became possessed of or entitled to the negro, and as to his being pledged by Bell to Goff for the re-payment of two hundred dollars, and as to the tender made to Goff, and his promise to return the negro, the annual hire and value of the negro, he pleaded, that on 19 February, 1803, Goff being in possession of the negro, and claiming him as his own, he, Beeman, purchased said negro from Goff for the sum of two hundred and thirty dollars, which he then paid to Goff, who delivered the negro to him, and made to him a bill of sale, which he was ready to (275) produce when required. And that at the time he so purchased and paid for the said negro, he had no notice of Complainant's claim, nor of any claim to the negro other than that of Goff's. All which matters he averred and pleaded in bar of Complainant's bill, and craved judgment of the Court, whether, c.
As to so much of the bill as he did not plead to, he answered, that he purchased the negro of Goff on 19 February, 1803, for the sum of $230, which he paid to Goff, and took from him a bill of sale; and that he had been in quiet possession of the negro from that time up to the filing of the bill. That when he so purchased and paid for the negro, he had no notice that Complainant or any other person had any claim to him; that the negro was about eight years old when he purchased *Page 213 
him, and at the time of putting in his answer, about twenty-one.
The bill was filed in 1818. And the parties having taken testimony, and the cause being set for hearing, certain issues were submitted to a Jury; who found "that the testator did, about 1802, pledge the negro slave in question to the Defendant, Goff, until he, Goff, should repay the sum of two hundred dollars then borrowed, and that the testator died on 17 February, 1803. That on 19 February, 1803, Goff sold the said negro to the Defendant, Beeman who then had no notice of the pledge by the testator to Goff; and that the Defendant, Beeman, had been in uninterrupted possession from the time of the purchase, without demand, until January, 1816, when the Complainant tendered four hundred and ninety dollars in bank bills, and demanded the slave, which was refused to be delivered up. They further found, that in 1806, Complainant tendered to Goff two hundred dollars and interest, and demanded the negro from Goff."
The Defendant, Beeman, rests his defence upon two grounds. 1st. That he is a purchaser for a valuable consideration without notice.2d. The length of time that intervened between his purchase and the Complainant's offer to redeem. (276) To render the first ground available, it is necessary that Beeman should have the legal estate. His plea is founded upon the idea, that he has the same equity as the Complainant, and besides that, has the legal estate; and that when the equity is equal, the law shall prevail. In this case, Beeman had not the legal estate; that still remained in Goff, for by the contract between Bell and Goff, the latter acquired only a special property in the negro pledged. Ld. Ray., 917. A pledge is different from a mortgage. The latter is a contract by which the entire property is transferred to the mortgagee, defeasible by the performance of a condition. After the day fixed for the performance is passed, the property becomes, by the contract, absolutely vested in the mortgagee. The former is a delivery of property, to be restored on the payment of a certain sum, and never becomes the absolute property of the pawnee. Cro. Jac., 244. Noy 137, 2 Ves. jun., 378. The legal estate was in Frederick Bell; Goff had only a special interest, and if it were transferable, (which is questionable) his assignee acquired his title and no more. 1 Bac. 372, 5 Term 604, 2 *Page 214 
Term 376. Therefore Beeman, not having the legal estate, his plea cannot avail him.
As to the second ground, the statute of limitations could not operate, as there was no time fixed for the redemption of the pledge. For the possession of the pawnee was not adverse, but according to the terms of the original contract, until the demand was made just before the filing of the bill. 1 Ves. 278. Time operates in two ways in a Court of Equity; first as a positive bar; secondly as a circumstance which will induce a Court of Equity to refuse its interference. In cases between cestui que trust and his trustee, the statute does not operate; it cannot therefore be pleaded. But length of time may operate to induce a Court to refuse its aid. Between cestui que trust and a stranger, the statute does operate (277) (1 John Ch. 316. 1 Bro. Ch. 552); and where it can operate as a positive bar, the statute should be pleaded or insisted upon in the answer. Here there was no trust between the Complainant and Beeman; the lapse of time should therefore have been insisted upon as a positive bar. But if in cases where there is no trust, the length of time may be met, either as a positive bar, or as a circumstance to induce a Court to refuse its interference; the time in this case is too short. It can only refuse its interference upon a presumption of satisfaction. That presumption cannot arise sooner in the case of a pledge or a mortgage than upon a bond.
The Defendant Beeman claims the protection of the Court of Equity, because he says that he is the purchaser of the slave in question, bonafide, for a valuable consideration, and without notice of the Complainant's title; and that he has had the continued possession thereof for upwards of nine years; and these facts are found by the Jury. A purchaser for a valuable consideration, without notice, is not to be dealt with in equity otherwise than at law; for where the equity is equal, the law shall prevail, and none can have a higher equity than such a purchaser, therefore this Court will not take from him any defense, shield or protection, which would avail him at law. Here his adverse possession for more than three years, is a good defence at law, under the plea of the statute of limitations. But it is said he has not pleaded the statute in this Court, and has therefore waived that defence. The statute cannot be pleaded in this case; but he pleads that he is a purchaser, and shews how at law he is protected, and prays that this Court will not take from him his defence, or deal otherwise with him than a Court of law would. And if *Page 215 
the Court can perceive that he has advantages at law, it will not interfere, but leave the parties to the Courts (278) of Law. But in fact the Defendant in this case, could not, in a Court of Equity, plead the statute; that can only be done and relied on as a positive bar, where the question is also cognizable at law; that is, where the Courts have concurrent jurisdiction. For equity follows the law, and the rights of the parties shall be the same in both Courts. They shall not be changed by the Complainant's choosing his forum. Where this Court has exclusive jurisdiction, equity will respect time, and frequently decides in analogy to the statute of limitations. But then the statute is not pleaded as a positive bar. The Defendant has done this in the present case: he exposes his situation, and the Court perceives that he has a good defence at law, which he may use with a safe conscience, and will not therefore interfere. Let the bill be dismissed: but without costs, except those incurred since the finding of the issue in the Defendant's favor.
 Cited: Allen v. McRae, 39 N.C. 338; Northcott v. Casper, 41 N.C. 314. (279)